UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

OLAOLUWA O. ILELABOYE

    Plaintiff

     v.

HUMANA WISCONSIN HEALTH
ORGANIZATION INSURANCE
CORPORATION

      Defendant

Case No. 3:22-cv-000108

---

## AMENDED COMPLAINT

---

Plaintiff Olaoluwa O. Ilelaboye, by his attorneys Turke & Strauss LLP, states as follows for his Amended Complaint against defendant.

1.      In this lawsuit Mr. Ilelaboye seeks to recover benefits due under an ERISA-governed employer health plan from Humana Wisconsin Organization Insurance Corporation ("Humana").

2.      Plaintiff is an adult resident of the State of Wisconsin, residing in Dane County.

3.      Defendant Humana is a Wisconsin stock corporation with offices located at the address listed in the Summons. Humana provides health insurance coverage to Wisconsin residents through, relevant here, employer-sponsored group health plans.

4.      The employer health plan at issue in this case is Group Plan Sponsor ADP

TotalSource Inc., group plan number 667332 (the "Plan").

5.     Humana provides insurance benefits to participants of the Plan. Additionally, as an ERISA claims review fiduciary, Humana interprets all Plan provisions, makes all eligibility for benefits determinations and resolves factual questions relating to coverage and benefits.

**The Plan**

6.     The Plan provides that when an insured <u>chooses</u> to use an out of network provider, the non-network rates will apply: "When an insured *elect[s]* to utilize the services of a non-network provider for a covered service, benefit payments to such non-network provider are not based upon the amount billed."

7.     The Plan instructs that if an insured needs emergency care, the insured should go to the nearest network hospital emergency room or, if the insured's condition does not allow her to go to a network hospital, she should find the nearest hospital emergency room:

**Seeking emergency care**

If *you* need *emergency care*:

- Go to the nearest *network hospital* emergency room; or
- Find the nearest *hospital* emergency room if *your* condition does not allow *you* to go to a *network hospital*.

*You*, or someone on *your* behalf, must call *us* within 48 hours after *your* admission to a *non-network hospital* for *emergency care*. If *your* condition does not allow *you* to call *us* within 48 hours after *your* admission, contact *us* as soon as *your* condition allows. *We* may transfer *you* to a *network hospital* in the *service area* when *your* condition is stable. *You* must receive services from a *network provider* for any follow-up care for the *network provider copayment, deductible* or *coinsurance* to apply.

8.     The Plan states that if an insured is *admitted* to a *non-network hospital* for emergency care, the insured must call Humana within 48 hours after admission or, if the

2

insured is not able to call Humana within that period, the insured must contact Humana as soon as she is stable.

9.      The Plan says Humana may transfer an insured to a network hospital when the insured's condition is stable.

10.      Following admission to a non-network hospital for emergency services, the Plan says an insured must receive services for *follow-up care* from an in-network provider for the network provider copayment, deductible or coinsurance to apply.

11.      The Plan states that the annual dollar limits to "covered expenses" do not apply to covered expenses that are "essential health benefits."

12.      The Plan defines "essential health benefits" as the categories determined by the Affordable Care Act, including "Emergency services" and "Hospitalization."

13.      The Plan does not define "Emergency services."

14.      The Affordable Care Act defines "Emergency services" as "evaluation of an emergency medical condition and treatment to keep the condition from getting worse."

15.      "Covered expenses" are "[m]edically necessary services to treat a sickness or bodily injury."

16.      The Plan defines the "maximum allowable fee" for a "covered expense, other than emergency care services provided by non-network providers in a hospitals' emergency department" is *the lesser of* the following:

- The fee charged by the provider;

- The fee that has been negotiated with the provider whether directly or through an intermediary;

- The fee Humana establishes by comparing rates from regional or national databases for similar services;

- The fee based on rates Humana negotiated with other payors or provider networks in a geographic area;

- The fee based upon the provider's cost for providing the same or similar services as reported in a Medicare cost report; or

- The fee based on a percentage Humana determines of the fee Medicare allows for the same or similar services.

**Mr. Ilelaboye's Medical Emergency**

17.     On or about February 19, 2021, Mr. Ilelaboye was traveling in Minnesota.

18.     While traveling, Mr. Ilelaboye suffered an acute and life-threatening medical emergency. As required under the Plan, Mr. Ilelaboye sought medical care at the nearest emergency care facility, Rice Memorial Hospital in Wilmar, Minnesota ("Rice").

19.     After performing tests and physical examination of Mr. Ilelaboye, the physicians at Rice Memorial determined that given his acute medical condition, Mr. Ilelaboye needed immediate medical attention with a specialist. However, Rice did not have such a specialist on staff.

20.     The Rice staff inquired with several hospitals if they could accept Mr. Ilelaboye on an emergent basis—including Fairview Ridge in Burnsville, Minnesota and the University of Minnesota Hospital.

21.     However, neither Fairview Ridge nor University of Minnesota could accept Mr. Ilelaboye immediately.

4

22.     As a result, the physicians at Rice transferred Mr. Ilelaboye by ambulance to Abbott Northwestern Hospital in Minneapolis, Minnesota ("Abbott").

23.     Abbot is an "out of network" provider under the Plan.

24.     Mr. Ilelaboye had no choice as to the selection of the hospital for his emergent care needs or whether to see a specialist, as his acute medical emergency was a matter of life or death.

25.     On or about February 19, 2021, Mr. Ilelaboye was admitted to Abbott and underwent emergency diagnostic tests and surgical procedures.

26.     On or about February 22, 2021, Mr Ilelaboye's physician contacted Humana on his behalf to alert them of his emergency medical condition.

27.     Mr. Ilelaboye was discharged from Abbott on February 23, 2021.

28.     The treatment Mr. Ilelaboye received from Abbott qualifies as Emergency Services.

29.     On February 26, 2021, after returning to Madison, Wisconsin, Mr. Ilelaboye was seen by physicians in the network provider, UW Health system, for follow-up medical care.

**Humana Breaches the Plan by Denying Coverage for Emergency Services**

30.     Following Mr. Ilelaboye's medical emergency, he received numerous medical bills from Abbott providers attributable to the medical treatment he received.

31.     Humana denied coverage for Abbott-related medical costs that were billed to Mr. Ilelaboye (the "Abbott Costs") because according to Humana, they exceeded Humana's "maximum allowable fee" for "covered expenses" at a non-network hospital.

5

32.     Humana denied coverage for the Abbott Costs even though they were "covered expenses" within the "Essential Heath Benefits" category (emergency services and hospitalization) for which the Plan does *not* apply annual dollar limits.

33.     Humana denied coverage for the Abbott Costs even though the "maximum allowable fees" do not apply to emergency services provided by non-network providers in a hospital's emergency department.

34.     Humana denied coverage even though Mr. Ilelaboye followed the Plan's direction in emergency situations.

35.     Humana denied coverage even though Mr. Ilelaboye did not "elect" to seek emergency care from a non-network hospital. Under the Plan, Humana should have covered Mr. Ilelaboye's emergency services because he: (i) received "emergency services"; (ii) at the nearest emergency room that could treat his condition, which he did not "elect"; (iii) the Plan's "maximum allowable fees" did not apply because he received services "provided by non-network providers in a hospitals' emergency department[.]"

36.     Even so, Humana informed Mr. Ilelaboye that it would not pay anything in excess of the "maximum allowable fees" and that Mr. Ilelaboye would be responsible for the difference between the maximum allowable fee and the amount Abbott and its providers were charging.

37.     As a result, Mr. Ilelaboye owes medical bills to providers in excess of $34,850, including $22,000 to Abbott Northwestern Hospital.

**Mr. Ilelaboye exhausts the Plan's appeal requirements**

38.     The Plan outlines certain appeal and external review rights.

6

39.     Mr. Ilelaboye timely exercised and exhausted his appeal rights with Humana as to its coverage decision.

40.     On or about July 30, 2021, Humana's Grievance and Appeal Department informed Mr. Ilelaboye that it had denied his claims as to the Abbott Costs "over the maximum allowable fee." But that letter did not include any information as to how Humana calculated the maximum allowable fee or why Humana did not consider his treatment "emergency services."

41.     The Plan requires that when Humana denies an appeal, it provides the insured a "copy of the rule, protocol or similar criterion" relied on in making such decision, free of charge to the claimant. Humana did not provide this information to Mr. Ilelaboye.

42.     Mr. Ilelaboye then engaged legal counsel, who, on Mr. Ilelaboye's behalf requested on or about October 7, 2021, that Humana provide copies of all information Humana relied upon in determining the "maximum allowable fee" as to Mr. Ilelaboye's claims.

43.      On or about October 11, 2021, Humana responded that it was "researching the issue" and would respond within the "required timeframe."

44.     However, Humana has failed to respond and has not provided Mr. Ilelaboye or his counsel with information justifying its "maximum allowable fee."

45.     Mr. Ilelaboye continues to receive collection notices and phone calls from Abbott-related creditors. As a result of Humana's unjustified claim denial and failure to follow its own procedures, Mr. Ilelaboye will suffer damages in an amount to be

7

determined at trial.

## Count I

### Claim for Benefits under 29 U.S.C. § 1132(a)

46.   Mr. Ilelaboye realleges the Complaint allegations above.

47.   Under the Plan, Humana breached the Plan by denying coverage for the Abbott Costs.

48.   Humana breached its obligations under Plan by failing to timely provide the information justifying that decision.

49.   Humana's breach caused Mr. Ilelaboye damages in an amount to be determined at trial.

**WHEREFORE,** Mr. Ilelaboye demands judgment against defendant for his uncovered medical charges, together with taxable costs and disbursements of this action, actual attorney's fees and costs and such further relief as the Court deems just and equitable.

Dated this 19th of March 2022

**TURKE & STRAUSS LLP**

Electronically signed by Mary C. Turke
Mary C. Turke, SBN 1027045
Alex Phillips, SBN 1098356
613 Williamson Street Suite 201
Madison, WI 53703
Ph: 608-237-1776
Email: Mary@turkestrauss.com
Email: Alexp@turkestrauss.com

*Attorneys for plaintiff*

8